UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DONALD K. DELISLE, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Civil Action No. 04-11906-JLT |
| MICHAEL T. MALONEY, | ) ) ) | |
| Respondent. | ) ) | |

**RESPONDENT'S MEMORANDUM OF LAW
IN OPPOSITION TO PETITIONER'S PETITION FOR
WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254**

The respondent hereby submits this memorandum in opposition to the petition for writ of habeas corpus filed by Donald K. Delisle ("the petitioner"). As set forth below, the petition pursuant to 28 U.S.C. § 2254 should be denied because the Massachusetts state court's decision that the probation surrender was appropriate rests on adequate state law grounds, which are independent of the federal question, and which thus cannot form the basis for habeas review. Moreover, the petition should be denied where the state court's decision was neither contrary to, nor an unreasonable application of, clearly established federal law, as determined by the Supreme Court.

**STATEMENT OF THE CASE**

The background of this case, as described by the Massachusetts Supreme Judicial Court ("SJC") is as follows:

> On December 13, 1990, a Hampshire County Superior Court jury convicted
> Delisle of violating an abuse prevention order (three counts) (G.L. c. 209A, § 7),

assault and battery (G.L. c. 265, § 13A), intimidation of a witness (G.L. c. 268, § 13B), and attempted extortion (G.L. c. 265, § 25). He was sentenced to a total of four years committed to a house of correction on the convictions of violating an abuse prevention order and assault and battery. On the attempted extortion conviction, Delisle received a State prison sentence of from twelve to fifteen years, suspended for a four-year period of probation to commence on his release from the house of correction.[1] The sentencing judge imposed several special conditions of probation, including that Delisle "participate in substance abuse counseling and in person counseling or therapy as ordered by the probation department."

In May, 1995, Delisle was released from incarceration and placed on probation in Hampshire County. In addition to the special conditions of probation imposed by the sentencing judge, Delisle was also required to pay a monthly probation fee of thirty dollars. Delisle signed a probation contract setting forth the standard terms and special conditions of his probation with a notation next to his signature reading "[s]igned while case on appeal under duress [and] stress." Shortly thereafter, Delisle moved to Boston, and his probation was transferred to Suffolk County. Delisle was subsequently surrendered on his probation three times, the last of which is the subject of this appeal.

*Commonwealth v. Delisle,* 440 Mass. 137, 138-39 (2003).

## STATEMENT OF FACTS

The SJC's recitation of facts is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). *See Coombs v. Maine*, 202 F.3d 14, 18 (1st Cir. 2000); *Avellar v. DuBois*, 30 F.Supp.2d 76, 79 (D.Mass. 1998); *Otsuki v. DuBois*, 994 F.Supp. 48, 51 & n.3 (D.Mass. 1998); *cf. Sumner v. Mata*, 449 U.S. 539, 545-46 (1981)(holding that the presumption of correctness under former habeas statute applied to "factual determinations made by state courts, whether the court be a trial court or appellate court"). This deference extends to inferences drawn by the state court from those factual determinations as well. *See Parke v. Raley*, 506 U.S. 20, 35 (1992); *Flores v. Marshall*, 53 F.Supp.2d 509, 514 (D.Mass. 1999).

---

[1] The SJC noted in a footnote that "Delisle's conviction of intimidating a witness was placed on file with his consent." *Commonwealth v. Delisle,* 440 Mass. 137, 138 n.2 (2003).

The SJC found the following facts:

Delisle's first surrender resulted from his failure to pay the monthly probation fee. After a surrender hearing on January 28, 1998, a judge in the Superior Court reimposed Delisle's probation to its original term and directed that he participate in substance abuse counselling by attending Alcoholics Anonymous (AA) meetings three or more times weekly and that he participate in personal counselling by enrolling in the "Emerge Program" for batterers (Emerge). Emerge is a private, nonprofit corporation that provides education and counselling services to batterers. Delisle signed a revised probation contract that included the requirements of participation in AA and Emerge, without objection.

During the spring and summer of 1998, Delisle attended AA sessions and some, but not all, of his scheduled Emerge sessions. As a consequence of poor attendance and poor performance, he was expelled from Emerge on August 26, 1998. During this same period, he was also charged on three separate occasions with criminal violations of G.L. c. 209A in the East Boston District Court. The complainant in each instance was the woman Delisle had married while incarcerated.[2] On the basis of his expulsion from Emerge and the new criminal complaints brought against him in East Boston, Delisle was surrendered on his probation for a second time in October, 1998. A surrender hearing was held in the Superior Court on December 12, 1998, after which the judge reimposed Delisle's probation, extending it from May 12, 1999, to December 14, 1999.[3] The judge also ordered that all previously imposed probation conditions were to remain in effect, and directed that Delisle present documentary proof of his attendance at Emerge sessions to his supervising probation officer every fourteen days. Delisle posed no objection to the ruling, and again signed a probation contract incorporating all of the pertinent probation conditions.

The condition that Delisle continue to attend Emerge sessions, in spite of having been "terminated" from the program in August, was apparently the result of Delisle's decision to accept an offer by Emerge to allow him to reenter the program if he met certain conditions. Emerge extended that offer in a letter to Delisle dated November 17, 1998. One of the conditions for readmission was that he "[n]ot be verbally, emotionally, financially, or physically abusive toward [his wife] . . . ." Another was that he not accept money from her for his weekly

---

[2] The SJC explained that "[t]his is not the same woman Delisle was convicted of assaulting and abusing in Hampshire County in 1990." *Commonwealth v. Delisle*, 440 Mass. at 139, n.3.

[3] "The original four-year period of probation would have expired on May 12, 1999." *Commonwealth v. Delisle*, 440 Mass. at 139, n.4.

program fee (twenty dollars). A third was that he "[w]rite a letter stating all your abuse of [his wife], the effects of each act on [her], and how each occurrence could have been avoided."[4] Following his receipt of this offer of readmission, Delisle attended an Emerge session on December 8, 1998.[5]

On December 15, 1998, the day after his surrender hearing and his agreement to the condition that he resume regular attendance at Emerge sessions, Delisle took twenty dollars from his wife's bank account and went to a session. Emerge personnel informed him that he had not yet met the conditions for readmission into the program (as set forth in the November 17 letter) and that he would have one week to comply with the condition that he write the reenrollment letter, or his readmission would be denied. Delisle left the session, went home, blamed his wife for his predicament and physically assaulted her.

The next day his wife telephoned Emerge and related what had happened when Delisle returned from the session. She then telephoned Delisle's probation officer for the same purpose. Emerge sent a letter by facsimile transmission, dated December 16, 1998, to Delisle's probation officer advising him that Delisle was not going to be readmitted to its program because he had abused his wife, used her money to pay for a program session, and failed to write the reenrollment letter.

After receiving this letter from Emerge, Delisle's probation officer prepared a surrender notice (dated December 18, 1998) alleging that Delisle had violated the terms of his probation by reason of (1) his termination from Emerge and (2) new criminal complaints for abuse and assault brought against him in the Lynn District Court on October 20, 1998, that had been unknown to the probation officer and the judge at the time of December 14, 1998, surrender hearing. On receiving this surrender notice, Delisle had another altercation with his wife that led to his arrest

---

[4] The SJC stated that "[i]t is undisputed that the only purpose for which Emerge requires such a letter as a condition of readmission to its program is to assess the batterer's amenability to treatment, and especially his ability to identify alternatives to violence." *Commonwealth v. Delisle*, 440 Mass. at 140, n.5. The SJC also found that Emerge's policies "prohibited the disclosure of the contents of such letters to anyone outside Emerge, including probation officers, without the permission of the participant." *Id.* at 144.

[5] The SJC noted that "[a]n official at Emerge later described Delisle's participation at this one session as 'poor' insofar as '[h]e consistently minimized and denied engaging in any violent behavior towards [his wife] despite informing the group that he had been arrested on several charges of domestic assault and battery and restraining order violations [and] sought to blame [his wife] for his abusive behavior and . . . to present himself as her victim." *Commonwealth v. Delisle*, 440 Mass. at 140, n.6.

4

and yet another set of criminal charges being brought against him in the East Boston District Court.

On December 28, 1998, an amended notice of surrender was served on Delisle, citing theses new charges as an additional ground for surrender, and also adding the assault on his wife that occurred on December 15, 1998 (when Delisle returned home from the merge session) as a ground for surrender separate from his termination from Emerge.[6]

A third surrender hearing was held over four days in January and February, 1999. Delisle's probation officer, a senior staff member of Emerge, Delisle, his wife, and other witnesses testified at the hearing. Just prior to the commencement of the surrender hearing, a jury in the Lynn District Court found Delisle guilty of the assault and abuse charges that had been brought against him on October 20, 1998, and he was sentenced to serve four and one-half years in a house of correction. At the surrender hearing, Delisle conceded that he had been convicted and sentenced on these offenses, and that they constituted one of the grounds on which his present surrender had been based. At the conclusion of the surrender hearing, the judge found that the judge who held the second surrender hearing on December 14, 1998, had not been made aware of the existence of the charges pending in the Lynn District Court at the time she extended Delisle's probation from May 1999, to December, 1999.[7] The judge also found that Delisle had been terminated from the Emerge program because he failed to "write an essay concerning his abuse" of his wife that had been a condition of his readmission into the program; that he failed to pay the program fee with his own money, which "was part of the therapy that was to be then administered"; and that he physically assaulted his wife on December 15, 1998. On the basis of these findings, the judge ultimately found that Delisle had violated the terms of his probation.[8] He then proceeded to revoke Delisle's probation and impose the suspended twelve to fifteen year sentence to State prison "forthwith."

---

[6] "One of the terms of Delisle's probation was that he 'must obey local, state and federal laws and court orders.' Assaulting his wife in violation of State law would be violative of this condition, as well as a breach of the conditions set by Emerge for Delisle's readmission into the program." *Commonwealth v. Delisle*, 440 Mass. at 141, n.7.

[7] "Another term of Delisle's probation was the requirement that he report any new arrests to his probation officer. Delisle did not contest the Commonwealth's contention at the surrender hearing that he had never notified his probation officer of the charges brought in the Lunn District Court." *Commonwealth v. Delisle*, 440 Mass. at 142, n.8.

[8] The SJC noted that "[t]he judge made no findings regarding the assault complaints brought against Delisle in the East Boston District Court, which were the subject of disputed testimony at the surrender hearing." *Commonwealth v. Delisle*, 440 Mass. at 142, n.9.

*Commonwealth v. Delisle*, 440 Mass. at 138-142.

## ARGUMENT

**I.    The Petitioner Is Not Entitled to Habeas Corpus Relief Where His Detention Is Based on Adequate State Law Grounds Independent of His Fifth Amendment Claim.**

It is well established that a federal habeas court may "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Boutwell v. Bissonnette*, 66 F.Supp.2d 243, 245 (D. Mass. 1999), *quoting Coleman v. Thompson*, 501 U.S. 722, 729 (1991). Here, the SJC's decision clearly holds that there were factors entirely separate from the petitioner's failure to write a letter to Emerge detailing his instances of abuse which were, on their own, sufficient bases to revoke the petitioner's probation. *See Commonwealth v. Delisle*, 440 Mass. at 143. The SJC found that

> Delisle's probation was not revoked "merely because [he] refused to make . . . disclosures concerning his own criminal conduct." *Minnesota v. Murphy*, 465 U.S. 420, 104S.Ct 1136, 70 L.Ed.2d 409 (1984). A fair reading of the record of the surrender hearing and the judge's findings support the conclusion that the judge revoked Delisle's probation not only because he was terminated from Emerge, but also because he was convicted of violent offenses against his wife in the Lynn District Court, and because he assaulted his wife on December 15, 1998, on returning home from his Emerge session. Repeated assaults perpetrated by a convicted batterer in violation of the terms of his probation are serious matters, and there is no doubt that they provided an ample basis for the revocation of Delisle's probation, quite apart from his termination from Emerge, a program intended to reduce the likelihood of such assaults.

*Commonwealth v. Delisle*, 400 Mass. at 143. Since the SJC found that there were grounds which, independent of the request for the letter, were sufficient under Massachusetts law to

revoke the probation, this Court should dismiss the habeas petition.[9]

The question of the reenrollment letter can be separated from the other factors raised at the probation surrender hearing.[10]  The petitioner's contract of probation had several discrete conditions of probation which he violated.  First, he was required to "report any new arrests to his probation officer," but it is undisputed that he failed to fail the probation officer of the charges pending against him in the Lynn District Court. *Commonwealth v. Delisle*, 440 Mass. at 141-42 & n.8.  Second, he was required to "pay the program fee [for Emerge] with his own money," but he took money from his wife's account for this purpose.[11]  *Id.* at 141-42.  Third, he was required to "obey local, state and federal laws and court orders"; however, it is undisputed that he was convicted of assaulting his wife in violation of state law while he was on probation. *Id.* at 141-42 & n.7.  Each of these individually could have warranted surrender of the

---

[9] The petitioner correctly notes that there is a requirement that there be a written statement of the findings on which the revocation of probation is based.  Under Massachusetts law, that requirement is satisfied where, as here, a transcript sets forth the revocation proceedings and the judge's stated reasons for the revocation decision.  *See Commonwealth v. Durling,* 407 Mass. 108, 113-14 (1990); *Commonwealth v. Morse*, 50 Mass. App. Ct. 582, 592-93 (2000).

[10] Contrary to the petitioner's assertion, there is no need to remand this case for a determination of the effect, if any, of the petitioner's refusal to write the reenrollment letter on his probation surrender.  Although there was no Fifth Amendment violation (as is explained in greater detail in Section II, below), even if there were a Fifth Amendment violation the question for this court would be whether the error in allowing evidence regarding the reenrollment letter was harmless.  *See Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).  Here, the error could only be harmless because there were so many other, independent grounds for the petitioner's probation surrender.

[11] Even assuming that there is some ambiguity in the transcript about what weight the judge had decided to give some or all of the evidence, there is nothing which constitutes the "clear and convincing evidence" needed to overturn the SJC's resolution of the issue. *See* 28 U.S.C. § 2254(e); *see also See* Transcript Vol. I, p. 29; Transcript Vol. III, p. 36 (in which the judge admitted, without objection, testimony that the petitioner had taken his wife's money (with her permission) rather than using his own money for the program fees).

petitioner's probation[12], without any reference to whether he was obeying the condition which required him to be enrolled in Emerge.[13] *Id.* at 143.

Although the petitioner attempts to minimize or discredit the state court's findings of fact as to the petitioner's other actions which led to his probation revocation, his allegations cannot even cast doubt on the state court's findings, much less supply the clear and convincing evidence needed under the AEDPA standard to challenge the state court's factual determination. For example, the petitioner makes the unsupportable claim that the trial judge's statement about the petitioner's failure to bring the charges in the Lynn District Court was only "intended to resolve a procedural question." *See* Petitioner's Brief, p. 17. However, the record shows that this was a factual finding which the judge made "by a preponderance of the evidence," not as a legal question. *See* Transcript, Vol. IV, p. 78; *see also* Transcript Vol. IV, p. 50 (in which the judge inquires about the fact that case no. 13CR5558 was not brought to Judge Quinlan's attention, and then goes on to inquire that the "*second ground* [for the probation surrender] is termination from the Emerge program")(emphasis added). Likewise, the petitioner argues that the trial court's finding that the petitioner had stepped on the foot of and "kneed" his wife was nothing more than

---

[12] As the SJC noted, "[t]he probation contracts that Delisle signed all carry the following provision: 'If you fail to comply with any of the following conditions of probation, now placed on you by this court, you may be ordered to appear again in court, after due notice, and the court may change the condition, extend the period of probation, or impose sentence.'" *Commonwealth v. Delisle,* 440 Mass. at 145, n. 13.

[13] Moreover, even the fact that the petitioner had been denied reenrollment in the Emerge program could have been considered by the state court without involving the petitioner's decision to decline write the reenrollment letter. As the SJC noted, "[e]ven Delisle's termination by Emerge (or more accurately its decision not to readmit him to its program) was not based merely on his failure to write the reenrollment letter. In fact, the triggering event was the December 15, 1998, assault on his wife that was reported to Emerge the following day." *Commonwealth v. Delisle*, 440 Mass. at 143, n.12.

"a subsidiary finding supporting the ultimate finding that Emerge had justifiably expelled" the petitioner.[14]  *See* Petitioner's Brief p. 18.  However, nothing in the transcript suggests that the judge's finding is tied to the petitioner's termination from the Emerge program as opposed to being a separate ground for the probation surrender.[15]  The petitioner has not presented any evidence which could overcome by clear and convincing evidence the SJC's determination as to

---

[14] The petitioner's suggestion, on page 18 of his brief, that "there is a substantial question about whether Mr. Delisle had adequate written notice" that abusing his spouse was a violation of his probation contract can only be seen as disingenuous.  It is undisputed that the petitioner knew that he was obligated to obey state and local laws, and he certainly understood that assaulting his wife was a violation of the law.

[15] The relevant portion of the transcript of the judge's remarks reads as follows:

All right.  I'm prepared to make some findings here . . . .

I'm prepared to find by a preponderance of the evidence that the Lynn District Court case 98-13CR5558 was not brought to the attention of Judge Quinlan. That's a ruling I've made.

I find as a fact that the defendant was terminated from the Emerge program, the grounds for which I find are that on December 15, 1998, he failed to write an essay concerning his abuse of Anita Delisle that had been requested of him. (with a period after that)[sic].

I find that he failed to pay the twenty dollar group session fee as contemplated; that is, that it was his responsibility to pay for that and that it was part of the therapy that was then to be administered.

And I do find that he did step on her foot and drove his knee into her leg, knowing that that action would cause her pain.

And I think with those findings, I find as a fact that he did violate the terms of his probation set out in the sentence of the Hampshire County sitting of this Court in 1991.

Again, I make these findings by a preponderance of the evidence.

Transcript, Vol. IV, pp. 78-79.

what a "fair reading of the record" shows.[16]  *See* 28 U.S.C. § 2254(e).

In his brief, the petitioner asserts that "Massachusetts appellate courts do not employ the 'right for any reason' rule of practice, whereby an appellate court is free to affirm a ruling on grounds different from those the trial court relied on if the correct or preferred basis for affirmance is supported by the record." Petitioner's Brief, p. 19, n.13.  However, even if the SJC's opinion was seen as making an error in applying a "right for any reason" rule to decide that the surrender of the petitioner's probation was appropriate, that error was an error of state law, which cannot be the basis for habeas review.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990).  Accordingly, the petitioner's claim must fail.

**II.    The Petitioner Is Not Entitled to Habeas Corpus Relief Where the SJC's Adjudication of His Claim Was Not Contrary To, or an Unreasonable Application Of, Clearly Established Supreme Court Law.**

**A.    Standard of Review**

Since the instant petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), this Court's review is governed by that act.  *Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  *See also* 28 U.S.C. § 2254.  AEDPA "places a new constraint on the power of a federal habeas court to grant a state petitioner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams*

---

[16] Likewise, the petitioner's argument that the trial court's decision to revoke probation (rather than merely finding a violation) was based "solely" on the failure to participate in and obey the tenets of the Emerge program (*see* Petitioner's Brief, p. 16-17) depends on a skewed reading of the record.  While it is true that the judge did show concern that the petitioner had failed to take advantage of the Emerge program, his remarks show a more substantial concern about the petitioner's "fundamental disregard . . . of his situation" and the petitioner's failure to "understand his underlying problems." *See* Transcript, Vol. IV, pp. 79, 81.

*v. Taylor*, 529 U.S. 362, 412 (2000); *Williams v. Matesanz*, 230 F.3d 421, 426 (1st Cir. 2000)("a federal [habeas] court operates within a closely circumscribed sphere").  As the Supreme Court recently reiterated, AEDPA requires a "'highly deferential standard for evaluating state-court rulings' . . . which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 23 (2002)(*per curiam*), *quoting Lindh*, 521 U.S. at 333, n.7.  In relevant part, AEDPA precludes a federal court from granting habeas relief, unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *See* 28 U.S.C. §2254(d)(1-2); *see also Tyler v. Cain*, 533 U.S. 656, 660 (2001).   In addition, under AEDPA, state court determinations of factual issues "shall be presumed to be correct" unless the petitioner rebuts this "presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Coombs v. Maine*, 202 F.3d 14, 18 (1st Cir. 1999).

       1.     The "Contrary To" Prong

A state court decision is "contrary to" clearly established Supreme Court precedent in only two circumstances: (a) where "the state court applies a rule that contradicts the governing law set forth in" Supreme Court cases or (b) where "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor,* 529 U.S. at 405-06.  Under either scenario, in order to fall within the "contrary to" clause, the state court decision must be "substantially different," diametrically different," "opposite in character or nature," or

"mutually opposed" to clearly established Supreme Court law. *Id.*

### 2. The "Unreasonable Application Of" Prong

A state court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams v. Taylor*, 529 U.S. at 407-09, 413. Merely that the state court reached an incorrect result is not sufficient -- the result also must be unreasonable. *L'Abbe v. DiPaolo*, 311 F.3d 93, 96 (1st Cir. 2002), *citing Williams v. Taylor*, 529 U.S. at 411; *see also McCambridge v. Hall*, 303 F.3d 24, 36-37 (1st Cir. 2002)(en banc)("'some increment of incorrectness beyond error is required' . . . The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court"), *quoting Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000). Where, for instance, the state court reaches a result that is "devoid of record support for its support for its conclusion or is arbitrary," the unreasonable application prong likely will be satisfied." *McCambridge*, 303 F.3d at 37, *citing O'Brien v. DuBois*, 145 F.3d 16, 25 (1st Cir. 1998). *See also Kibbe v. DuBois*, 269 F.3d 26, 35 (1st Cir. 2001), *cert. denied* 535 U.S. 960 (2002); *Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir.), *cert. denied* 534 U.S. 925 (2001). In order for a federal habeas court to find that the "unreasonableness" prong has been met, the state court's determination of either the law or the facts must be *objectively* unreasonable. *See Williams v. Taylor,* 529 U.S. at 411; *Williams v. Matesanz*, 230 F.3d at 426-27; *Torres v. Prunty*, 223 F.3d 1103, 1108 (9th Cir. 2000).

There is no bright-line rule as to what constitutes an "objectively unreasonable" application of federal law or determination of facts. *Williams v. Taylor*, 529 U.S. at 410 ("[t]he

term 'unreasonable' is no doubt difficult to define"). As the Supreme Court has made clear, however, an incorrect state court determination is not necessarily an unreasonable one. *Id.* ("the most important point is that an unreasonable application of federal law is different from an *incorrect* application of federal law")(emphasis in original). It is well-settled that "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application [or determination] must also be unreasonable." *Id.* at 411.

      **B.**      **The SJC's Decision on the Petitioner's Claim Was Neither Contrary To, Nor an Unreasonable Application of, Established Federal Law**.

The petitioner claims that the SJC's decision ran afoul of the Supreme Court's ruling that a state may not "constitutionally carry out a threat to revoke probation for the legitimate exercise of the Fifth Amendment privilege." *Minnesota v. Murphy*, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984). However, the SJC's ruling was neither contrary to nor an unreasonable application of the holing of *Minnesota v. Murphy*. Rather, the SJC correctly applied the holding of the *Minnesota v. Murphy* case, and determined that, on the facts of the petitioner's case, the petitioner's probation status "was not contingent on his decision concerning whether to write the reenrollment letter," and thus no Fifth Amendment violation had occurred. *Commonwealth v. Delisle*, 440 Mass. at 145.

The SJC correctly stated that the Fifth Amendment protects "against compelled self-incrimination," and then proceeded to find that "[b]ased on the record before us, there is no unconstitutional compulsion in this case." *Commonwealth v. Delisle*, 440 Mass. at 145. The SJC explained:

> Delisle was terminated from Emerge for poor attendance and performance. He was subsequently offered readmittance by the program (not by the court) subject to several conditions (none of which was imposed by the court), including that he write the reenrollment letter describing his abusive behavior, the effect of such abuse on the victim, and how each act of abuse could have been avoided. The consequence for Delisle's not writing this letter was the possibility that he would not be readmitted by Emerge. This consequence is not an inducement or a penalty rising to the level of compulsion prohibited by the Fifth Amendment.
>
> Delisle's assertion of compulsion is predicated on the penalty of the revocation of his probation. He claims that his probation would be revoked if he did not write the reenrollment letter, but revocation was far from an automatic consequence. *See Minnesota v. Murphy*, 465 U.S. 420, 438-39, 104 S.Ct. 1136, 79 L.ED.2d 409 (1984)(finding no compulsion or violation of Fifth Amendment where revocation of probation was not automatic). Emerge could only decide whether to readmit him; the decision to seek revocation rested with Delisle's probation officer. Beyond that, a revocation hearing was required before a judge who would ultimately determine whether to revoke Delisle's probation and, if so, whether other conditions of probation or the suspended sentence ought to be imposed.[17] His failure to write the letter was just one of many choices he voluntarily made in the face of Emerge's offer to give him a second chance and readmit him into the program if he agreed to certain conditions. Delisle's probation status was not contingent on his decision whether to write the reenrollment letter. *Cf. Mace v. Amestoy,* 765 F.Supp. 847 (D.Vt. 1991)(compulsion where probation officer told defendant that refusal to admit to sexual intercourse with victim was violation of probation condition).

*Commonwealth v. Delisle*, 440 Mass. at 144-45.

The petitioner argues that the SJC's decision was unreasonable because, he alleges, the SJC failed to take into account three factors in its analysis of whether the petitioner's Fifth Amendment rights were violated. The petitioner alleges that the SJC failed to note (1) that "as a special probationary condition imposed by Suffolk Superior Court, [the petitioner] was required

---

[17] "The probation contracts that Delisle signed all carry the following provision: 'If you fail to comply with any of the following conditions of probation, now placed on you by this court, you may be ordered to appear again in court, after due notice, and the court may change the conditions, extend the period of probation or impose sentence." *Commonwealth v. Delisle*, 440 Mass. at 145, n.13.

at all material times to remain in the Emerge program"; (2) that the petitioner "was threatened with, and later subjected to probation revocation for his failure to '[w]rite a letter stating all [his] abuse of [his wife] Anita Delisle . . .'"; and (3) that "Emerge was legally required by the terms of its State certification as a batterer intervention program . . . to pass along to [the petitioner's] probation office and Suffolk Superior Court his disclosures of abusive conduct occurring both before and during therapy." *See* Petitioner's Brief, pp. 6-8. However, a review of the SJC's decision shows that the petitioner's assertion is simply not accurate. Rather, it is clear that the SJC did consider these factors but determined that, in light of the circumstances of the petitioner's case, no Fifth Amendment violation had occurred. *See generally, Commonwealth v. Delisle*, 440 Mass. at 139-145.

As to the first of the petitioner's contentions, the SJC's decision makes it plain that the SJC was fully aware that the petitioner was required to remain in the Emerge program. *See Commonwealth v. Delisle*, 440 Mass. at 139-140. Indeed, the SJC specifically noted that before he was asked to write the reenrollment letter, Delisle had been terminated from the program due to his own "poor attendance and performance." *Id.* at 144. Accordingly, it is clear that the SJC was fully aware that it was a condition of Delisle's probation that he be enrolled in the Emerge program when it decided that his probation status was "not contingent on his decision concerning whether to write the reenrollment letter." *Id.* at 145.

The petitioner's second contention, that his probation was revoked for failing to write the reenrollment letter, is simply belied by the record in this case. As is set forth in Section I, above, the petitioner's probation was revoked due to a number of factors, only one of which was his

failure to participate in the Emerge program.[18]  Moreover, the record makes it the decision that the petitioner was not caused simply by his failure to write the reenrollment letter; instead, the triggering event which caused Emerge to report that the petitioner to the would not be readmitted to its program to was his abuse of his wife on December 15, 1998.  *See Commonwealth v. Delisle*, 440 Mass. at 139-143 & n. 12; *see also* Transcript Vol. I, pp. 15, 30.

   As to the third contention, there is simply no evidence to support the petitioner's contention in the state court record. *See generally* Transcripts, Vols. I-IV. By contrast, the SJC's holding that "[i]t is undisputed that the only purpose for which Emerge requires such a letter as a condition of readmission to its program is to assess the batterer's amenability to treatment" is entirely supported by and consistent with the record.  *See Commonwealth v. Delisle*, 440 Mass. at 140, n. 5.  Robert Currance, a counselor and group supervisor from Emerge, testified to facts consistent with the SJC's finding, and there was no testimony to the contrary.  *See* Transcript Vol. I, pp. 46-47.  Moreover, the SJC's decision is supported by the affidavit of David Adams, Program Director of Emerge, who testified that "Emerge uses [the] Re-enrollment Letters for one purpose: to assess the batterer's amenability to treatment, especially his ability to identify alternatives to violence." *See* Respondent' Supplemental Appendix (hereinafter, "Supp. App."), No. 4, Exhibit A, ¶ 5; *see also Commonwealth v. Delisle*, 440 Mass. at 138, n.1 (acknowledging the amicus brief of the Attorney General, to which Mr. Adams' affidavit was appended).  Mr. Adams further testified that

> Re-enrollment Letters are kept confidential.  Emerge does not send the letter to any agency in the Commonwealth (*e.g.*, the Probation Department) without the

---

[18] The text of the judge's findings leading him to revoke the petitioner's probation is set forth in footnote 15, above.

> petitioner's written permission. Nor does Emerge share information in the Re-enrollment Letter with the Commonwealth without permission. I am not aware of any case in which a Re-enrollment Letter (or information therein) was used in a criminal prosecution.
>
> . . . the Re-enrollment Letters are used solely to evaluate a batterer's amenability to treatment. The letters are not used to gather information for a criminal investigation or prosecution.

Supp. Ans., No. 4, Exhibit A, ¶¶ 7-8. In light of this uncontroverted evidence, the petitioner may not rely on his own conjecture about what Emerge's practice might be as a means of casting doubt on the SJC's ruling.

The petitioner argues further that the SJC's decision must be an unreasonable application of the *Minnesota v. Murphy* rule because the SJC's holding differs from that of the result reached in several other District Court cases, most notably *Mace v. Amestoy*, 765 F.Supp. 847 (D.Vt. 1991). However, the mere fact that the SJC reached a different result from the *Amestoy* court does not render the SJC's decision unreasonable. Rather, the SJC distinguished the *Amestoy* case, noting that in *Amestoy* there was a direct connection between the requested statement and the possible probation revocation, while in the petitioner's case the connection between the letter requested by Emerge and the possibility of punishment was simply too attenuated to create a Fifth Amendment violation. *See Commonwealth v. Delisle*, 440 Mass. at 144-45. Indeed, the petitioner acknowledges that other courts have also distinguished the *Amestoy* case. *See* Petitioner's Brief, p. 13, n.8, and cases cited therein. The SJC's holding was a reasonable interpretation of *Minnesota v. Murphy*, and even if this Court might have decided the issue differently, it cannot grant habeas relief unless the SJC's decision was "objectively unreasonable." *See Williams v. Taylor*, 529 U.S. at 410 (noting that "an unreasonable application of federal law is different that an *incorrect* application of federal law)(emphasis in original).

Since the SJC properly applied the rule of *Minnesota v. Murphy* to the facts of this case, the habeas petition must be denied.

## CONCLUSION

For the foregoing reasons, the respondent respectfully requests that this Court deny the petition for habeas corpus and dismiss the petitioner's claim in its entirety.

Respectfully submitted,

/s/ Maura D. McLaughlin
Maura D. McLaughlin (BBO #634923)
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, MA 02108
(617) 727-2200, ext. 2857

Dated: February 7, 2005